**Duane BEVER, Plaintiff–Appellee,**

v.

**TITAN WHEEL INTERNATIONAL, INC., Dico Inc., and Titan Wheel Corporation of Wisconsin, Defendants–Appellants.**

No. 00–1594.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 16, 2000.

Decided April 16, 2001.

Before Hon. RICHARD D. CUDAHY, Hon. JOHN L. COFFEY, and Hon. TERENCE T. EVANS, Circuit Judges.

### ORDER

A jury sided with Duane Bever on his claim that Titan Wheel International, Inc. violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* Titan, contending that its motion for judgment as a matter of law or for a new trial should have been granted, appeals.

Bever worked for Titan as an assembler for over 27 years. The assembler's job involved rotating between two tasks: one was mounting and inflation, which was the more demanding task; the other was running a machine called a Denison.[1] The Denison job involves preparing wheel rims for mounting, a less rigorous job than mounting and inflation.

Bever suffered from cancer and, as a result, in October 1993 his left leg was amputated. He was later fitted with a prosthesis. He has been receiving social security disability payments since the amputation in 1993.

In July 1994 a workplace assessment was conducted by Lori Kessenich from Cedar Haven Rehabilitation Agency; she informed Titan that Bever could perform the Denison job but that it would be unsafe for him to operate the tire mount machine. When Bever returned to work in September 1994, plant manager Rick Kohl assigned Bever to work exclusively at the Denison.

Then on October 12, 1995, Bever, who was also diabetic, experienced an insulin reaction in the company parking lot after work. The next day Titan placed him on unpaid leave pending medical assessments by various health professionals. On October 19 Dr. David Drury ordered that a physical capacity assessment be conducted on Bever. The result was a finding that Bever "can perform his required job duties as reported without any difficulties throughout full shift...." The job duties reported involved work on the Denison machine. A similar conclusion was reached during a job analysis at the plant in 1995. Also in October 1995, Bever had a heart attack, resulting in by-pass surgery. He was on medical leave from October 1995 until he was laid off in April 1996 and terminated in April 1997.

Bever sued, and on March 27, 1998, Titan's motion for summary judgment was granted in part; however, Bever was allowed to proceed to trial on his claim that Titan failed to make a reasonable accommodation for him as required by the ADA. This is the claim Bever prevailed on at trial.

Not surprisingly, the parties do not see the case in quite the same light. Titan contends that in 1994, when Bever returned to work, he was given the job of operating the Denison as a temporary assignment—that it was never intended to be a permanent assignment. When it became clear that Bever could not perform both duties required of an assembler, the company says it was under no duty to create a new job for him. To allow Bever to continue as a Denison operator would be, in effect, doing just that. That the company allowed him to operate the Denison for a time was merely the company's going "far beyond what is required of it under the ADA." In denying its motion for

---

1. Apparently named for the manufacturer.

judgment as a matter of law, the district court, in Titan's words, "penalizes Titan for its generosity."

Bever thinks the contention that the Denison job was a temporary placement is a fabrication designed for this litigation. He says he was never told it was temporary—or for that matter that it was permanent. What happened in his view is that after his insulin reaction the company became concerned about his posing a safety threat. However, when the medical experts weighed in, saying that he was not a safety threat in the Denison job, the company had to come up with a new explanation for terminating him. The company came up with the argument that the Denison job was temporary—a contention Bever finds incredible because it had to be obvious to the company all along that the tire-mount function would be impossible for a person whose leg had been amputated, and clearly he was not going to "recover." Under that circumstance, what would be the point of a "temporary" job?

We review the denial of a motion for judgment as a matter of law *de novo. Mathus v. Board of Trustees of S. Ill. Univ.,* 207 F.3d 938 (7th Cir.2000). In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Court resolved a conflict in the circuits over the proper standard for reviewing a Rule 50 motion.

> It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.
>
> In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

At 2110 (citations omitted). With this in mind, we will examine the evidence in the record. Before we do that, however, a few general points need to be mentioned.

At the outset, we express our agreement with Titan that no case—this one or any other—should result in discouraging employers from taking steps to help their disabled employees. Titan thinks that could be the result here because it went out of its way to let Bever have the Denison job for a while and now is being penalized for its generosity by having the job characterized as one which attained permanence—the "no good deed goes unpunished" defense. We do not think that is what happened. The facts are much fuzzier than that. As we will see, there is evidence that the Denison job had never before been considered a permanent position, but there is also no evidence of any meaningful discussion with Bever as to whether the job was his to keep or only his temporarily. There is also the question as to what possible improvement Bever could make which would enable him to do the tire mount job, which required pressure on a foot pedal, which he was and would remain unable to apply. A company can ensure it will not be punished, as Titan claims it was here, by engaging in frank discussions with the employee about the nature of what is being offered to him, as required by the ADA. *See Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560 (7th Cir.1996).

Titan also argues that the district court decisions are contradictory, leading to the conclusion that Bever was not a "qualified individual" under the ADA and therefore not protected. The argument is that Bev-

er is not a "qualified individual" because the district court ruled that he could not perform the job as an assembler with or without an accommodation. Therefore, termination from a job as an assembler was not in violation of the Act. Titan contends that the court then inexplicably allowed Bever to proceed under his reasonable accommodation claim. The argument, while having some logical appeal, does not carry the day. Because Bever was allowed to work exclusively at the Denison work station for nearly a year and a half and there were no meaningful discussions between Titan and Bever about the nature of the accommodation, we think that whether this assignment was temporary or permanent was unclear to him, and he can claim he was a qualified individual for the job he held.

Related to the argument that the district court decisions were contradictory is the claim that Bever made judicial admissions that he was waiving his accommodation claim. Bever's attorney made a statement during closing arguments that "[w]e are never arguing that he was allowed to have a permanent accommodation in the Denison machine." The statement may seem somewhat inexplicable given the fact that the duration of the accommodation is, in fact, an issue in the case. But it is Titan's issue, not Bever's. Bever's counsel was concentrating on another issue. The thrust of his closing argument was that Titan's claim that the Denison job was temporary was not the real reason for the termination, but was a false reason given when it became clear that the real reason would not withstand scrutiny. The real reason was that "they simply don't want this man in their plant because they are afraid of him"; that is, they are afraid he is a safety concern. The claim is that a concern with safety was irrational and shows prejudice: "They are afraid of Duane Bever because he has a false leg."

The safety concern is considered pretextual because, in Bever's view, the medical evidence—which we shall discuss later—refutes the safety concern. Because Bever contends that Titan's explanation of its reason for Bever's termination-that is, that the job was temporary—is false and that the real reason is that the company was afraid of him, the statement counsel made during closing arguments is not fatal to his claim. Bever counters Titan's claim that the Denison job was temporary by pointing out that he had been allowed to do the Denison job for a year and a half without the company showing that the situation posed an undue hardship. He contends that he should have been allowed to continue to do the job. The issue then becomes whether assignment to the Denison work station was a reasonable accommodation and whether termination from that position was in violation of the ADA. In Titan's view, the issue is simply whether the job was temporary or permanent.

Under the ADA, once an employee informs his employer of his legitimate disability, the employer's obligation to provide a reasonable accommodation is triggered. *Beck v. University of Wis. Bd. of Regents,* 75 F.3d 1130 (7th Cir.1996). At that point, the employer must engage with the employee in an "interactive process" to determine an appropriate accommodation. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560 (7th Cir.1996). The requirement is that the employer must discuss with the employee accommodations which might enable the employee to continue working. *Hendricks–Robinson v. Excel Corp.,* 154 F.3d 685 (7th Cir.1998). *Hendricks–Robinson* involved the precise issue before us: whether light-duty jobs were temporary. We said that if the jobs were truly temporary, the company was not required "to convert them into permanent ones for the permanently restricted em-

ployees." However, the company had not made it clear whether the jobs were temporary or permanent: "[I]t remains a question of fact whether the jobs were temporary." At 697. In that case, as well, there was a question of fact "whether the injured employees knew that the jobs in which they initially were placed were truly temporary or whether they could consider the jobs a reasonable accommodation for their impairments." At 698.

So at long last we arrive at the issue before us, which is whether a reasonable jury could have made the findings it did. One piece of evidence, which we have already mentioned would support a finding that the job was not considered temporary, was that Bever worked at the job for a year and a half. Two separate work place assessments started with the presumption that the job they were evaluating Bever for was the Denison job. In addition, a number of internal company memos allow the inference that the Denison job became Bever's work assignment. Rochelle Didier, Titan's human resources manager, said that in October 1995, Bever was allowed to return to work full-time "regular duty with no restrictions." The return to work had necessarily to be to the Denison. She also said that his top two duties would be bearing insertion and wheel paint broach. These are the tasks which comprise the Denison job. Another company official informed the Equal Employment Opportunity Commission that the company "put Mr. Bever in the denison position . . . which is the lightest and easiest job we have in the entire plant." She continued to explain why Bever was terminated, "But, steadiness and balance is essential in even this job." "This job" was the Denison job, which experts found that Bever could do without posing a safety threat.

Bever's own testimony, which the jury could evaluate, was somewhat contradicto-

ry. At one point he said that Kohl, who as we said was the plant manager, told him the Denison job was not permanent. He also stated, however, that he was not told the job was permanent or temporary. He was told to "do the best you can at this job." In response to a question about whether he was told that at some time "you are going to have to be able to do the tire mount and the tire inflation job to keep your job here," he said "No." Then he was asked what he would have done had he been told that. His response was, "I probably would say I have to look for a different job then. I can't stay here no more." Looking at this testimony as a whole, the jury could have concluded that Bever was not aware that he was being given a temporary job.

The jury could also have concluded that Titan had not shown that the accommodation of allowing Bever to stay at the Denison caused an undue hardship. Didier conceded that Titan never determined whether it would be overly expensive to allow Bever to continue working at the Denison.

■ Finally, the jury could have inferred that the real reason for Bever's termination was that the company was afraid he was a safety threat at the plant, no matter what job he was doing. Given all this, the jury was entitled to believe that Titan's explanation for Bever's termination was an after-the-fact inspiration designed for litigation. And, after *Reeves,* Bever can prevail by convincing the jury that, in fact, the stated reason for his firing was pretextual. Like this case, *Reeves* involved Rule 50 motions. Although it was an age discrimination case involving a disparate treatment claim, we think it is instructive because, as *Reeves* itself acknowledges, there is a good deal of cross-breeding among various employment laws. The Court found that in a proper

situation a prima facie case "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 120 S.Ct. at 2109. That is not a novel proposition in our court. *See Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir.1994). The evidence from the medical personnel which the company itself consulted supports the jury's verdict.

Dr. Bruce Griswold, who treated Bever for diabetes since 1989, testified that Bever's diabetes could be controlled and diabetes would not cause him to be a safety threat at the plant. Dr. Drury, who is a medical doctor with a masters degree in public health, testified that in 1995 he performed a physical examination on Bever as the request of the company. He testified at trial that he found a "well-developed well-nourished white male who did not appear to be in any distress...." Furthermore, the examination of Bever's eyes showed that the muscles which control eye movement as well as the backs of the eyes were normal. The latter was important in this case because "people who have long-standing insulin dependent diabetes that is out of control" often have "changes in the backs of their eyes." No changes were found in Bever. After obtaining clearance from Dr. Griswold, Dr. Drury ordered what he described as a "very extensive strenuous" test—a physical capacity assessment. The assessment was performed by David Benavides, a registered occupational therapist. Benavides tested range of motion and strength for the lower extremities, the neck, the trunk, and the upper extremities. He evaluated Bever's walking, sitting, standing, climbing, jogging, and balance, kneeling, squatting, crawling, stopping, lifting, and carrying abilities. He found that Bever's ambulation was adequate on level surfaces,

though it was slow, and he had an abnormal gait because of the prosthesis. The conclusion was that Bever could perform his job duties on the Denison. This was a conclusion which Dr. Drury said surprised him after the conversations he had with persons from Titan, who apparently were painting a much grimmer picture. Dr. Drury also testified that it was not reasonable for the company to believe that the disabilities suffered by a person with an amputated leg, such as Bever, would not be permanent.

All this leads us to conclude that there was sufficient evidence from which the jury could reasonably have concluded that Bever's rights under the ADA were violated.

Titan also raises an alleged evidentiary error in the district court's exclusion from evidence of the EEOC determination of "no evidence to support finding of discrimination." The district judge, John W. Reynolds, found that the determination would likely mislead the jury into thinking that "some governmental agency has done something." Whether or not to allow an EEOC determination to be admitted at trial is within the discretion of the district court. *Reeder–Baker v. Lincoln Nat'l Corp.,* 834 F.2d 1373 (7th Cir.1987); *Tulloss v. Near North Montessori School, Inc.,* 776 F.2d 150 (7th Cir.1985). We find no abuse of that discretion.

Also, Titan contends that it is entitled to judgment as a matter of law because Judge Reynolds did not require Bever to explain the inconsistency in his representations to the court and his claim before the Social Security Administration that he was totally disabled. The argument grows out of the recent decision in *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), in which the Supreme Court held

that while an assertion of total disability in a social security claim does not preclude an ADA claim, but

> [w]hen faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

At 1604. Titan complains that the judge did not require, nor did Bever offer, any explanation, and therefore Titan should have been granted judgment as a matter of law.

The timing on this issue is interesting. *Cleveland* was decided on May 24, 1999. This case was tried from May 26 to June 2, 1999. In preparation for the trial, on May 13, 1999, Bever filed a motion in limine to bar evidence of disability benefit applications to the Social Security Administration. Titan responded to the motion on May 24, claiming that while statements on social security applications are not conclusive of an ADA claim, they are relevant evidence. This is consistent with Titan's earlier statement in connection with its summary judgment motion:

> Plaintiff next argues his receipt of social security benefits is not dispositive. Once again, Titan agrees and never argued that it was.

Titan made this statement in its brief in support of summary judgment. Then, in a commendable heads-up fashion, the next day—the day after the decision in *Cleveland*—Titan filed a supplemental response, stating that Bever should be required to explain why the SSI application is not inconsistent with the ADA claim. At trial, there was testimony in front of the jury that Bever was receiving social security benefits, and his wife testified that receiving benefits for a period of time was allowed while a recipient tried to return to work.

But there was no instruction informing the jury that receiving benefits under the SSA was not inconsistent with an ADA claim or that Bever had some explaining to do. In fact, there was no jury instruction whatsoever dealing with social security benefits. More importantly, as far as we can tell from the record before us (we have not received much guidance as to what is in the record on this issue), Titan proposed no jury instruction on the issue and raised no objection to that omission. Nevertheless, Titan's argument on appeal is that the district court erred in not granting judgment as a matter of law or a new trial where the court did not require that Bever explain the possible inconsistency between his ADA claim and his SSI application. The problem with the argument is that our review of Titan's Rule 50 motion in the district court shows that the issue was not raised. We cannot find that there was error in the way this trial was conducted in regard to this issue, and in any case it is doubtful whether any potential error was raised before the district court.

The judgment of the district court is AFFIRMED.