TEXTO COMPLETO DE LA SENTENCIA
Génesis Security Services, (en adelante, la apelante), solicita revoquemos la Sentencia emitida el 14 de abril de 2004, por el Tribunal de Primera Instancia, Sala Superior de Ponce, que declaró Ha Lugar la Demanda por Despido Discriminatorio presentada contra la apelante por Waleska Rodríguez Medina (en adelante, la apelada) y ordenó a Génesis Security Services el pago de $105, 952.80 por concepto de daños.
*901 Por los fundamentos que expondremos a continuación, CONFIRMAMOS la Sentencia apelada.
I
El 1 de mayo de 1997, Waleska Rodríguez Medina comenzó a trabajar para la empresa Wackenhut Puerto Rico, Inc., como operaría en las estaciones de peaje de la autopista número 52 en Ponce. Las labores de la apelada consistían en dar cambio monetario a los usuarios del peaje. Wackenhut Puerto Rico, Inc., eximió a la apelada de los tumos de la madrugada y de trabajar en otras estaciones de peaje.
El 1 de abril de 2000, Wackenhut Puerto Rico, Inc. traspasó la operación de las estaciones de peaje a Génesis Security Services, Inc., y ésta retuvo los servicios de la señora Rodríguez Medina. Al momento del traspaso de operaciones a Génesis, la señora Rodríguez Medina llenó una solicitud de empleo en la que hizo constar que padecía de la condición de epilepsia. Para esa fecha la apelada trabajaba los tumos de 5:00 A.M. a 1:00 P.M. y de 1:00 P.M. a 9:00 P.M., exclusivamente en la estación de peaje de Ponce.
El 27 de abril de 2000, la señora Rodríguez Medina sufrió un ataque de epilepsia en su lugar de trabajo y fue trasladada al Hospital Pila de Ponce. A raíz de este incidente, la apelada solicitó los servicios del Fondo del Seguro del Estado, los cuales le fueron denegados por no estar relacionada su condición con el empleo.
La señora Rodríguez Medina se comunicó con su patrono vía telefónica en varias ocasiones para que éste le asignara el día que le correspondía volver al trabajo, (Transcripción de la Prueba Oral, página 37, líneas 11-25; página 41, líneas 18-25.) El 5 de mayo de 2000, la apelada solicitó su reinstalación por escrito y allí manifestó su disponibilidad para trabajar en sus antiguos tumos. Véase, Carta de la apelada, página 151 del Apéndice de la Apelación y Transcripción de la Prueba, página 39).
No obstante, Génesis le informó a la señora Rodríguez Medina su traslado a la estación de peaje de Salinas y un cambio para el tumo de 9:00 P.M. a 5:00 A.M. La apelada no aceptó el cambio de tumo y alegó que por su condición de epilepsia se le hacía imposible trasladarse a Salinas para trabajar tumos nocturnos. Génesis no accedió a los reclamos de la apelada, por lo que el 18 de mayo de 2000, ésta entregó su informe. Dicha entrega se anotó en el expediente de personal de la apelada.
El 25 de mayo de 2000, Waleska Rodríguez Medina presentó querella contra Génesis Security ante la Unidad Antidiscrimen del Departamento del Trabajo y la Equal Employment Opportunity Commission (EEOC). El 25 de octubre de 2000, la EEOC emitió el Notice of Right to Sue, en el que reconoció el derecho de la apelada a reclamar judicialmente.
El 17 de octubre de 2000, la apelada solicitó beneficios por incapacidad a la Administración del Seguro Social, los cuales fueron concedidos el 22 de marzo de 2002, con efecto retroactivo al 27 de abril de 2000.
El 23 de enero de 2001, Waleska Rodríguez Medina presentó Demanda contra Génesis Security Services por despido injustificado y discrimen por impedimento físico, al amparo de la Ley Número 80 de 30 de mayo de 1976, 29 L.P.R.A., Sección 185 et seq.; la Ley Número 44 de 2 de julio de 1985, 1 L.P.R.A., Sección 501 et seq.) y la Americans with Disabilities Act, (ADA), 43 U.S.C.S., Section 12102. La Demanda fue enmendada posteriormente para incluir una reclamación al amparo de la Ley de Compensación por Accidentes del Trabajo, 11 L.P.R.A., Sección 7.
Luego de varios incidentes procesales, el Tribunal de Primera Instancia denegó la solicitud de la señora Rodríguez Medina para que dicho foro dispusiera sumariamente del caso.
Una vez concluido el descubrimiento de prueba y celebrada la Conferencia con Antelación al Juicio, el Tribunal de Primera Instancia celebró la vista en su fondo el 14 de octubre y 24 de noviembre de 2003.
*902 La demandante, señora Rodríguez Medina, ofreció testimonio y presentó el testimonio pericial del neurólogo Charles Olivera. Por su parte, Génesis presentó el testimonio de su Gerente de Operaciones, Sr. Jorge Morales.
Las partes estipularon prueba documental que consistió en el expediente médico de la apelada, en el cual obra el certificado médico expedido por el Dr. Edwin Peguero, que sirvió de base para la concesión del tumo diurno, por parte del patrono anterior. Véase, páginas 133-139 del Apéndice de la Apelación. Las partes estipularon, además, el expediente del Hospital Doctor Pila, donde atendieron a la apelada luego del ataque epiléptico y el expediente del Dr. Charles Olivera, neurólogo que la atendía por su condición.
Una vez presentada la prueba de la demandante, Génesis solicitó al Tribunal de Primera Instancia la desestimación de la demanda por insuficiencia de prueba, moción que eventualmente fue denegada.
El 14 de abril de 2004, el Tribunal de Primera Instancia declaró Ha Lugar la Demanda incoada por Waleska Rodríguez Medina. Dicho foro determinó que Génesis discriminó contra la apelada por su condición de epilepsia y que la apelante conocía que la señora Rodríguez Medina padecía de dicha condición, toda vez que ésta así lo consignó en la solicitud de empleo. El tribunal determinó, además, que por orden médica, basada en la condición de epilepsia de la apelada, Wackenhut Puerto Rico, Lac. eximió a ésta de los tumos de la madrugada y de trabajar en otras estaciones de peaje, y concluyó que la apelada tenía un acomodo razonable con su patrono anterior.
El Tribunal a quo concluyó, además, que la conducta de Génesis violentó disposiciones estatales y federales y condenó a ésta al pago de varias partidas por concepto de daños y salarios dejados de devengar, para un total de $105,0952.80 a favor de la apelada y $17,619.10, por concepto de honorarios de abogado.
Génesis Security solicitó reconsideración, la cual fue denegada por el Tribunal de Primera Instancia. Inconforme, Génesis presentó el recurso de epígrafe. La apelante sostiene que incidió el Tribunal de Primera Instancia al concluir que la apelada fue despedida por razón de su impedimento, en violación de la Ley Número 44 de 2 de julio de 1985, 1 L.P.R.A., Sección 501, el Americans with Disabilities Act (A.D.A.) 43 U.S.C.S. Section 12102 et seq., y la Ley Número 80 de 30 de mayo de 1976, 29 L.P.R.A., Sección 185 (e). Además, entiende la apelante que la parte apelada no probó que Génesis es un patrono, para efectos de la aplicación del Americans with Disabilities Act (A.D.A.), supra; y la Ley Número 44, supra; por lo que el Tribunal de Primera Instancia carecía de jurisdicción sobre la materia.
Génesis arguye que el tribunal abusó de su discreción e incurrió en parcialidad en su apreciación de la prueba. En síntesis, la apelante sostiene que erró el Tribunal de Primera Instancia al determinar que la apelada disfrutaba de un acomodo razonable con su patrono anterior y que ésta estaba cualificada para realizar las funciones esenciales de su posición, aun cuando recibía beneficios por incapacidad concedidos por la Administración para el Seguro Social. La apelante sostiene, además, que las partidas concedidas por concepto de daños y pérdida de ingresos son excesivas y que la apelada nunca mitigó daños.
Por último, Génesis señala que incidió el tribunal a quo al determinar que la apelante fue temeraria y al imponerle el pago de honorarios de abogado.
Examinados los alegatos de las partes y sus anejos, resolvemos con el beneficio de la transcripción de la prueba oral.
II
A
La Ley Número 44 de 2 de julio de 1985, 1 L.P.R.A., Sección 501 et seq., y la Americans with Disabilities *903 Act de 1990 (A.D.A.), 42 U.S.C.A., Secs., 12101 et seq.; prohíben el discrimen en el empleo contra personas con impedimentos físicos y exigen a los patronos proveer al empleado acomodo razonable.
La Ley Número 44, supra, fue aprobada con el fin de proteger a las personas con impedimentos físicos o mentales, para ampliar sus oportunidades de empleo y prohibir el discrimen en su contra, Exposición de Motivos de la Ley Número 44, supra. A los mismos efectos, la Ley A.D.A., supra, estableció la obligación de todo patrono de proveer acomodo razonable en el lugar de trabajo a las personas con impedimentos.
El propósito de la Ley A.D.A. está plasmado en el inciso (b) de su primera sección, 42 U.S.C.A., See. 12101(b), como sigue:

“See. 12101. Finding and purposes

(a)...

(b) Purpose

It is the purpose of this chapter-

(1) to provide a clear and comprehensible national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; ”

Ambas leyes aplican a patronos que empleen 15 ó más empleados, 42 U.S.C. 2000 e (b); 1 L.P.R.A., See. 501 (h) (2) (Supl. 2006).
La Ley Número 105 de 20 de diciembre de 1991 enmendó la Ley Número 44, supra, 1 L.P.R.A., Sección 501 et seq., para atemperar nuestra legislación a las disposiciones de la Ley A.D.A., Ríos Jaimán v. Cidra Manufacturing Operations of Puerto Rico, 145 D.P.R. 746 (1998). Particularmente, el Artículo 9 de la Ley Número 44, supra, estableció la obligación del patrono de “llevar a cabo acomodos razonables en el lugar de trabajo para asegurar que se les permita a las personas con impedimentos, cualificadas, trabajar efectivamente al máximo en su productividad, excepto cuando el patrono pueda demostrar que tal acomodo razonable representará un esfuerzo extremadamente oneroso en términos económicos para la empresa,” 1 L.P.R.A., Sección 507 (a).
A tenor con la Ley Número 44, supra, acomodo razonable significa:
“...el ajuste lógico adecuado o razonable que permite o faculta a una persona cualificada para el trabajo, con limitaciones físicas, mentales o sensoriales ejecutar o desempeñar las labores asignadas a una descripción o definición ocupacional. Incluye ajustes en el área de trabajo, construcción de facilidades físicas, adquisición de equipo especializado, proveer lectores, ayudantes, conductores o intérpretes y cualquier otra acción que razonablemente le facilite el ajuste a una persona con limitaciones físicas, mentales o sensoriales en su trabajo y que no representa un esfuerzo extremadamente oneroso en términos económicos... ”. Artículo 1 (b), 1 L.P.R. A., Sección 501 (b).
Para que un empleado reciba protección al amparo de la Ley Número 44 y, por tanto, su patrono esté obligado a proveerle acomodo razonable, aquél tendrá que establecer que: (1) es una persona con impedimento como lo define la ley; y (2) está cualificado para llevar a cabo las funciones básicas de ese trabajo, con o sin el *904 acomodo razonable, Artículo 1 (d) de la Ley Número 44, supra, 1 L.P.R.A., Sección 501 (d).
La Ley Número 44, supra, define persona con impedimentos físicos, mentales o sensoriales como sigue:

“Toda persona con un impedimento de naturaleza, motora, mental o sensorial, que le obstaculice o limite su inicio o desempeño laboral, de estudios o para el disfrute pleno de la vida y que está cualificada para llevar a cabo las funciones básicas de ese trabajo o área de estudio, con o sin acomodo razonable.

Se entenderá, además, que es una persona con impedimentos... toda aquella persona cuyo impedimento le limite sustancialmente su desempeño en una o más actividades del diario vivir; que la persona tenga un historial previo de esa condición; o se le considere como que tiene dicho impedimento aun cuando no lo tiene, ” Artículo 1 (d) de la Ley Número 44, supra; 1 L.P.R.A. Sección 501 (d).
La Ley ADA define una persona con impedimentos cualificada como sigue:
“a qualified individual with a disability is a person who, with or without reasonable accomodation, can perform the essential functions of her job, ” 42 U.S.C., sec. 12111 (8).
Conforme a la Ley ADA, acomodo razonable incluye:
“job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations, ” 42 U.S.C., sec. 12111(9) (B).
De otra parte, la Ley de Seguro Social provee beneficios económicos a individuos que hayan sido declarados incapacitados, 42 U.S.C., See. 423 (a) (1). El estatuto define incapacidad como:
“inability to engage in any substantial gainful actitity by reason of any...physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months, ” 42 U.S.C., Sec. 423 (d) (1) (A).
En Cleveland v. Policy Management, 526 U.S. 795, al analizar el aparente conflicto entre ambos estatutos, el Tribunal expresó lo siguiente:

“In our view, however, despite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here. That is because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side.”

“We relieve that, in context, these two semingly divergent statutory contentions are often consistent, each with other. Thus pursuit, and receipt, of SSDI benefits does not automatically stop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA. Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could “perform the essential functions”of her previous job, at least with “reasonable accommodation. ”

“Further, the SSA sometimes grants SSDI benefits to individuals who not only can work, but are working. For example, to facilitate a disable person's reentry into the workforce, the SSA authorizes a 9-month trial- *905 work period during which SSDI recipients may receive full benefits. See 42 U.S. C., Sec. 422 (c), 423 (e) (1); 20 CFR, Sec. 404.1592 (1998). See also Sec. 404.1592 a (benefits available for an additional 15 month period depending upon earnings). Improvement in a totally disabled [person's physical condition, while permitting that person to work, will not necessarily or immediately lead the SSA to terminate SSDI benefits. And the nature of an individual s disability may change over time, so that a statement about that disability at the time of an individual s capacities at the time of the relevant employment decision, ” Cleveland v. Policy Management 526 U.S. 795.
En lo referente a los remedios contemplados por la legislación federal, la Sección 107 de la Ley A.D.A., supra, provee los mismos remedios en equidad, compensatorios y punitivos que el Civil Rights Act de 1964, 42 U.S.C. 2000 e-4 -9. Entre los remedios en equidad está el “back pay” y los compensatorios comprenden “emotional pain”, “suffering” y “mental anguish”. Para que proceda la concesión de daños punitivos debe demostrarse que el patrono actuó con malicia o indiferencia hacia la persona con impedimentos. La cuantía por daños compensatorios y punitivos es limitada y en estos casos no puede exceder de $50,000, 42 U.S.C. 1981 a [b][ 3]. Para determinar dicho límite no se tomará en consideración los remedios concedidos en virtud de la Ley Número 44, supra, y 42 U.S.C. 1981 a [b] [2],
Al amparo de la legislación federal, también procede la concesión de honorarios razonables, gastos y costas 42 U.S.C. 1205.
El Artículo 13 de la Ley Número 44 supra, dispone en lo pertinente que los remedios, facultades, autoridad y procedimientos establecidos en la Ley Número 100 de 30 de junio de 1959, 29 L.P.R.A., Sección 146, particularmente las secciones 147, 147 (a), 148 y 149 del Título 29, estarán disponibles para cualquier persona que entienda que ha sufrido discrimen en el empleo por razón de su impedimento, en violación a las disposiciones de las Secciones 501 et seq., del título 1 de L.P.R.A; Artículo 13 de la Ley Número 44 supra; 1 L.P.R.A., Sección 511.
La Ley Número 100, supra, le impone responsabilidad civil al patrono por una suma igual al doble del importe de los daños que su acto le hubiese causado al empleado o de una suma no menor de $500.00 ni mayor de $2,000.00, si no se pudieran determinar daños o el doble de los daños si éste fuere inferior a los $500.00. Esto incluye los ingresos que la demandante dejó de percibir desde su despido, sufrimientos, angustias mentales y daños emocionales, Odriozola v. Superior Cosmetic Dist. Corp., 116 D.P.R. 485 (1985); García v. Shiley Caribbean, 122 D.P.R. 193 (1988). Además, el Artículo 4 de la Ley Número 100, supra, dispone mandatonamente la imposición de honorarios de abogado en casos de discrimen patronal, 29 L.PR.A. Sección 149; López v. I.T.T. Intermedia, 142 D.P.R. 857 (1997).
En cuanto a los parámetros que deberán guiar a todas las ramas gubernamentales en la interpretación de las disposiciones de la Ley Número 44, supra, los Artículos 14 y 15 del estatuto, 1 L.P.R.A., Secciones 511 a y 511 b (Supl. 2006), en lo pertinente disponen:
“...ai interpretar esta legislación, deben utilizar una interpretación liberal y no restrictiva. Se precluye la utilización, como precedente reductor del alcance de los derechos de las personas con impedimentos, de toda decisión de un tribunal o una agencia administrativa federal que interprete o haya interpretado de una manera restrictiva y contra los intereses de las personas con impedimentos la Ley Pública Federal de 26 de julio de 1990, conocida como Americans with Disabilities Act, ” 1 L.P.R.A., Section 511a.
“Los tribunales y las agendas gubernamentales del Estado Libre Asociado de Puerto Rico deben [implantar] una interpretación liberal de los estatutos relacionados con los derechos de las personas con impedimentos, que esté conforme con los principios establecidos en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico y el fin de proteger y vindicar los derechos de las personas con *906 impedimentos”, 1 L.P.R.A., Sección 511 b.
La legislación laboral estatal define como despido “la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar, tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra," Artículo 5 de la Ley Número 80 de 30 de mayo de1976, 29 L.P.R.A., Sección 185 (e).
B
El alcance de la función revisora sobre cuestiones de hecho está regulado por la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A., Apéndice III, Regla 43.2, que en lo pertinente dispone:

“[Ljlas determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos [...]■ ”

Es doctrina reiterada por nuestro Tribunal Supremo que no debemos intervenir con las determinaciones de hechos que hace un tribunal de instancia y sustituir nuestro criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor, Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982). De ahí la norma de no intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que ha realizado el juzgador de los hechos, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto en la apreciación que de la prueba desfilada, Alvarez de Choudens v. Rivera Vázquez, 2005 J.T.S. 90, 165 D.P.R._(2005). La norma antes descrita descansa en el hecho de que los tribunales de instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos y por ello, su apreciación merece gran respeto y deferencia, Argüello v. Argüello, 155 D.P.R. 62 (2001); López Vicil v. I.T.T. Intermedia, Inc., 142 D.P.R. 857, 864-65 (1997).
En cuanto a la apreciación de la prueba pericial, los tribunales tienen amplia discreción en su apreciación, Culebra Enterprises Corp. v. E.L.A., res. el 31 de octubre de 1997, 143 D.P.R. 935 (1997); Valldejuli Rodríguez v. A.A.A., 99 D.P.R. 917, 921 (1971); Prieto v. Maryland Casualty Co., 98 D.P.R. 594, 623 (1970). La Regla 53 de Evidencia, 34 L.P.R.A., Apéndice IV, Regla 53, regula lo referente a la prueba pericial y dispone que un testigo capacitado como perito en relación con la materia sobre la cual va a declarar, podrá testificar en forma de opiniones cuando su conocimiento especializado sea de ayuda al juzgador para entender la evidencia o determinar un hecho en controversia. La especialidad de un perito en cierta área puede ser decisiva en cuanto al valor probatorio de su testimonio, Dye-Tex P.R. v. Royal Ins., Co., 150 D.P.R. 658, 664 (2000).
Nuestra función revisora relacionada a la valorización de daños o la consecuencia lesiva física, económica y moral de un perjudicado, ha sido, como regla general, la de abstención y deferencia hacia las determinaciones que sobre este aspecto hacen los tribunales de instancia pues son ellos los juzgadores directos del drama judicial viviente de quien los reclama, Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985). Este foro debe intervenir cuando se nos ha demostrado circunstancias que justifiquen tal intervención; como lo sería unas sumas de dinero ridiculamente bajas o exageradamente altas de acuerdo a los particulares hechos del caso, Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978).
Aclarado el alcance de nuestra función revisora, pasemos a aplicar la anterior normativa a los hechos particulares de la controversia ante nos.
111
La apelante sostiene que conforme a la definición de patrono de la Ley Número 44 y la Ley ADA, Génesis no es patrono porque la apelada no demostró que la empresa tiene quince empleados o más.
*907 En la querella por discrimen por impedimento presentada por la apelada ante la E.E.O.C., la Sra. Waleska Rodríguez alegó que Génesis contaba con más de 15 empleados, Apéndice del Alegato de la Apelada, página 11. La E.E.O.C. le notificó la querella a Génesis y ésta no sometió prueba que contradijera las alegaciones de la querellante ante ese foro. La EEOC determinó causa y autorizó a la apelada a demandar por discrimen por impedimento. Conforme a la Regla 16 inciso (32) de las Reglas de Evidencia, 34 L.P.R.A., Regla 16 (32), el foro de instancia consideró que al asumir jurisdicción sobre la materia y las partes, la E.E.O.C acató la ley del foro, ante el cual Génesis tampoco alegó no ser patrono. Véase, página 7 de la Sentencia apelada.
Génesis sostiene, además, que la apelada nunca solicitó acomodo por su condición de epilepsia. No obstante del testimonio de la señora Rodríguez Medina surge que ésta se comunicó con su patrono vía telefónica en varias ocasiones para que éste le asignara el día que le correspondía volver al trabajo, Transcripción de la Prueba Oral, página 37, líneas 11-25; página 41, líneas 18-25.) El 5 de mayo de 2000, la apelada solicitó su reinstalación por escrito y allí manifestó su disponibilidad para trabajar en sus antiguos turnos. Véase, Carta de la apelada, página 151 del Apéndice de la Apelación y Transcripción de la Prueba, página 39). El Tribunal de Primera Instancia adjudicó credibilidad al testimonio de la apelada por lo que, al evaluarlo, opera la doctrina de deferencia hacia la apreciación de la prueba oral por parte del foro apelado.
Del testimonio del Gerente de Operaciones de Génesis, Sr. Jorge Morales, surge que éste negó que hubiese recibido la carta de 5 de mayo de 2000 en la que la apelada afirma haber reclamado su puesto y turnos de trabajo. No obstante, el tribunal a quo no adjudicó credibilidad al testimonio del señor Morales. Véase, página 8 de la Sentencia apelada.
Conforme al testimonio pericial del neurólogo Charles Oliveras, perito de ocurrencia que trató a la apelada, ésta padece de epilepsia generalizada, condición que aunque es permanente, con medidas de protección, medicamentos y acomodo, no la inhabilita para realizar las labores esenciales de su empleo consistentes en dar cambio en las estaciones de peaje, Transcripción de la Prueba, páginas 134-137, 144-148.
El testimonio del perito fue relevante, además, para aclarar que la apelada no sufre de una incapacidad mental o motora que le impida realizar las funciones que desempeñaba en su trabajo. Mediante su testimonio, éste aclaró que tanto los criterios de la Administración del Seguro Social como su recomendación para la concesión de los beneficios económicos por incapacidad estuvieron basados en la frecuencia de las convulsiones y no implicaba una determinación de que la apelada sufriera de algún déficit mental que la inhabilitara para realizar las funciones esenciales de su plaza.
El Tribunal de Primera Instancia otorgó gran valor probatorio al testimonio pericial del Dr. Charles Oliveras. Dicho testimonio ayudó al tribunal a entender ciertos hechos en controversia, referentes a la naturaleza de la condición de la apelada, por la cual ésta solicitó a su patrono acomodo razonable.
En el ejercicio de la amplia discreción que tenemos para evaluar la pmeba pericial, no intervendremos con la apreciación y peso de la prueba adjudicado por el tribunal a quo al testimonio del perito de ocurrencia de la apelada.
Por su parte, Génesis no demostró, conforme a la doctrina de Cleveland v. Policy Management Systems Corp., supra, que la concesión de los beneficios concedidos a la apelada por la Administración del Seguro Social fuesen irreconciliables o no puedan coexistir con una reclamación de acomodo razonable al amparo de la Ley A.D.A.
La señora Rodríguez Medina estaba asignada a la estación de peaje de Ponce y exenta de trabajar el tumo de la madrugada. La prueba demostró que a raíz de la convulsión sufrida por ésta el 27 de abril de 2000 y de su reclamo posterior para ser repuesta en su tumo y puesto de trabajo, Génesis le comunicó a la apelada su *908 decisión de trasladarla a otra estación de peaje y de cambiarla al tumo de la madrugada. La apelante puso fin al acomodo razonable que por su impedimento disfrutaba la señora Rodríguez Medina y de este modo impidió la reintegración de la apelada a su trabajo. Previo a su despido, Génesis no indagó sobre la condición física de la apelada ni sobre su capacidad para continuar ejerciendo las funciones de su puesto.
La conclusión del tribunal apelado referente a que la apelante discriminó contra apelada por razón de su impedimento y violentó las disposiciones de la Ley Número 44, supra, y la Ley A.D.A., está respaldada por la prueba presentada y es correcta en derecho.
En lo referente a los remedios concedidos por el Tribunal de Primera Instancia, éstos proceden tanto al amparo de la legislación puertorriqueña como al amparo de la legislación federal.
Desde el 27 de abril de 2000 hasta el 22 de marzo de 2002, la apelada dejó de devengar $20,476.40 en salarios. El Tribunal de Primera Instancia determinó a base del testimonio de la apelada, que la indemnización por sus sufrimientos ascendía a $15,000.00. Conforme al Artículo 13 de la Ley Número 44, supra, y el Artículo 1 de la Ley Número 100, supra, estas partidas se duplican, por lo que se añaden otros $35,476.40.
El tribunal a quo adjudicó credibilidad al testimonio de la señora Rodríguez y determinó a base de la prueba presentada, que hubo malicia e indiferencia por parte de la apelante hacia los derechos de la apelada como persona con impedimento. Conforme a dicha determinación, el tribunal le impuso a Genesis el pago $35,000.00 como penalidad al amparo de la Ley ADA, luego de restar $15,000.000 por concepto de daños compensatorios.
La imposición del pago de $8,869 por concepto de honorarios de abogado corresponde al 25% de las partidas de salarios dejados de devengar y sufrimientos, que ascienden a $35,476.40. La ley federal autoriza también la imposición del pago de otros $8,750.00 en honorarios de abogado, que corresponde al 25% de los $35,000.00 impuestos por el Tribunal de Primera Instancia como penalidad al amparo de la legislación federal.
rv
Por los fundamentos anteriormente expresados, CONFIRMAMOS la Sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones