CLEVELAND *v.* POLICY MANAGEMENT SYSTEMS
CORP. ET AL.

No. 97–1008.   Argued February 24, 1999—Decided May 24, 1999

BREYER, J., delivered the opinion for a unanimous Court.

*John E. Wall, Jr.,* argued the cause for petitioner. With him on the brief was *Laura Eardley Calhoun.*

*Matthew D. Roberts* argued the cause for the United States et al. as *amici curiae* urging reversal. With him on the brief were *Solicitor General Waxman, Acting Assistant Attorney General Lee, Deputy Solicitor General Underwood, Arthur J. Fried, C. Gregory Stewart, Philip B. Sklover, Lorraine C. Davis,* and *Robert J. Gregory.*

*Stephen G. Morrison* argued the cause for respondents. With him on the brief were *C. Adair Bledsoe, Jr., David N. Kitner,* and *Kimberly S. Moore.**

JUSTICE BREYER delivered the opinion of the Court.

The Social Security Disability Insurance (SSDI) program provides benefits to a person with a disability so severe that she is "unable to do [her] previous work" and "cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." §223(a) of the Social Security Act, as set forth in 42 U. S. C. §423(d)(2)(A). This case asks whether the law erects a special presumption that would significantly inhibit an SSDI recipient from simultaneously pursuing an action for disability discrimination under the Americans with Disabilities Act of 1990 (ADA), claiming that "with . . . reasonable accommodation" she could "perform the essential functions" of her job. §101, 104 Stat. 331, 42 U. S. C. §12111(8).

We believe that, in context, these two seemingly divergent statutory contentions are often consistent, each with the other. Thus pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against

---

*Briefs of *amici curiae* urging reversal were filed for the Aids Policy Center for Children, Youth, and Families et al. by *Catherine A. Hanssens* and *Beatrice Dohrn;* and for the National Employment Lawyers Association et al. by *Alan B. Epstein* and *Paula A. Brantner.*

Briefs of *amici curiae* urging affirmance were filed for the Association of American Railroads by *Daniel Saphire;* and for the Equal Employment Advisory Council by *Ann Elizabeth Reesman.*

the recipient's success under the ADA. Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."

I

After suffering a disabling stroke and losing her job, Carolyn Cleveland sought and obtained SSDI benefits from the Social Security Administration (SSA). She has also brought this ADA suit in which she claims that her former employer, Policy Management Systems Corporation, discriminated against her on account of her disability. The two claims developed in the following way:

*August 1993:* Cleveland began work at Policy Management Systems. Her job required her to perform background checks on prospective employees of Policy Management System's clients.

*January 7, 1994:* Cleveland suffered a stroke, which damaged her concentration, memory, and language skills.

*January 28, 1994:* Cleveland filed an SSDI application in which she stated that she was "disabled" and "unable to work." App. 21.

*April 11, 1994:* Cleveland's condition having improved, she returned to work with Policy Management Systems. She reported that fact to the SSA two weeks later.

*July 11, 1994:* Noting that Cleveland had returned to work, the SSA denied her SSDI application.

*July 15, 1994:* Policy Management Systems fired Cleveland.

*September 14, 1994:* Cleveland asked the SSA to reconsider its July 11th SSDI denial. In doing so, she said:

"I was terminated [by Policy Management Systems] due to my condition and I have not been able to work since. I continue to be disabled." *Id.*, at 46. She later added that she had "attempted to return to work in mid April," that she had "worked for three months," and that Policy Management Systems terminated her because she "could no longer do the job" in light of her "condition." *Id.*, at 47.

*November 1994:* The SSA denied Cleveland's request for reconsideration. Cleveland sought an SSA hearing, reiterating that "I am unable to work due to my disability," and presenting new evidence about the extent of her injuries. *Id.*, at 79.

*September 29, 1995:* The SSA awarded Cleveland SSDI benefits retroactive to the day of her stroke, January 7, 1994.

On September 22, 1995, the week before her SSDI award, Cleveland brought this ADA lawsuit. . She contended that Policy Management Systems had "terminat[ed]" her employment without reasonably "accommodat[ing] her disability." *Id.*, at 7. She alleged that she requested, but was denied, accommodations such as training and additional time to complete her work. *Id.*, at 96. And she submitted a supporting affidavit from her treating physician. *Id.*, at 101. The District Court did not evaluate her reasonable accommodation claim on the merits, but granted summary judgment to the defendant because, in that court's view, Cleveland, by applying for and receiving SSDI benefits, had conceded that she was totally disabled. And that fact, the court concluded, now estopped Cleveland from proving an essential element of her ADA claim, namely, that she could "perform the essential functions" of her job, at least with "reasonable accommodation." 42 U. S. C. § 12111(8).

The Fifth Circuit affirmed the District Court's grant of summary judgment. 120 F. 3d 513 (1997). The court wrote:

"[T]he application for or the receipt of social security disability benefits creates a *rebuttable* presumption that the claimant or recipient of such benefits is judicially estopped from asserting that he is a 'qualified individual with a disability.'" *Id.,* at 518.

The Circuit Court noted that it was "at least theoretically conceivable that under some limited and highly unusual set of circumstances the two claims would not necessarily be mutually exclusive." *Id.,* at 517. But it concluded that, because

"Cleveland consistently represented to the SSA that she was totally disabled, she has failed to raise a genuine issue of material fact rebutting the presumption that she is judicially estopped from now asserting that for the time in question she was nevertheless a 'qualified individual with a disability' for purposes of her ADA claim." *Id.,* at 518–519.

We granted certiorari in light of disagreement among the Circuits about the legal effect upon an ADA suit of the application for, or receipt of, disability benefits. Compare, *e. g., Rascon* v. *U S West Communications, Inc.,* 143 F. 3d 1324, 1332 (CA10 1998) (application for, and receipt of, SSDI benefits is relevant to, but does not estop plaintiff from bringing, an ADA claim); *Griffith* v. *Wal-Mart Stores, Inc.,* 135 F. 3d 376, 382 (CA6 1998) (same), cert. pending, No. 97–1991; *Swanks* v. *Washington Metropolitan Area Transit Authority,* 116 F. 3d 582, 586 (CADC 1997) (same), with *McNemar* v. *Disney Store, Inc.,* 91 F. 3d 610, 618–620 (CA3 1996) (applying judicial estoppel to bar plaintiff who applied for disability benefits from bringing suit under the ADA), cert. denied, 519 U. S. 1115 (1997), and *Kennedy* v. *Applause, Inc.,* 90 F. 3d 1477, 1481–1482 (CA9 1996) (declining to apply judi-

cial estoppel but holding that claimant who declared total disability in a benefits application failed to raise a genuine issue of material fact as to whether she was a qualified individual with a disability).

## II

The Social Security Act and the ADA both help individuals with disabilities, but in different ways. The Social Security Act provides monetary benefits to every insured individual who "is under a disability." 42 U. S. C. § 423(a)(1). The Act defines "disability" as an

> "inability to engage in any substantial gainful activity by reason of any . . . physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A).

The individual's impairment, as we have said, *supra*, at 797, must be

> "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." § 423(d)(2)(A).

The ADA seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity. See, *e. g.*, 42 U. S. C. §§ 12101(a)(8), (9). The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual." § 12112(a). The ADA defines a "qualified individual with a disability" as a disabled person "who . . . can perform the essential functions" of her job, including those who can do so only "with . . . reasonable accommodation." § 12111(8).

We here consider but one of the many ways in which these two statutes might interact. This case does *not* involve, for example, the interaction of either of the statutes before us with other statutes, such as the Federal Employers' Liability Act, 45 U. S. C. § 51 *et seq.* Nor does it involve directly conflicting statements about purely factual matters, such as "The light was red/green," or "I can/cannot raise my arm above my head." An SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, "I am disabled for purposes of the Social Security Act." And our consideration of this latter kind of statement consequently leaves the law related to the former, purely factual, kind of conflict where we found it.

The case before us concerns an ADA plaintiff who both applied for, and received, SSDI benefits. It requires us to review a Court of Appeals decision upholding the grant of summary judgment on the ground that an ADA plaintiff's "represent[ation] to the SSA that she was totally disabled" created a "rebuttable presumption" sufficient to "judicially esto[p]" her later representation that, "for the time in question," with reasonable accommodation, she could perform the essential functions of her job. 120 F. 3d, at 518–519. The Court of Appeals thought, in essence, that claims under both Acts would incorporate two directly conflicting propositions, namely, "I am too disabled to work" and "I am not too disabled to work." And in an effort to prevent two claims that would embody that kind of factual conflict, the court used a special judicial presumption, which it believed would ordinarily prevent a plaintiff like Cleveland from successfully asserting an ADA claim.

In our view, however, despite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here. That is because there

are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side.

For one thing, as we have noted, the ADA defines a "qualified individual" to include a disabled person "who . . . can perform the essential functions" of her job *"with reasonable accommodation."* Reasonable accommodations may include:

> "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." 42 U. S. C. § 12111(9)(B).

By way of contrast, when the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of "reasonable accommodation" into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI. See Memorandum from Daniel L. Skoler, Associate Comm'r for Hearings and Appeals, SSA, to Administrative Appeals Judges, reprinted in 2 Social Security Practice Guide, App. § 15C[9], pp. 15–401 to 15–402 (1998). The omission reflects the facts that the SSA receives more than 2.5 million claims for disability benefits each year; its administrative resources are limited; the matter of "reasonable accommodation" may turn on highly disputed workplace-specific matters; and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide. See Brief for United States et al. as *Amici Curiae* 10–11, and n. 2, 13. The result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it.

For another thing, in order to process the large number of SSDI claims, the SSA administers SSDI with the help of a five-step procedure that embodies a set of presumptions about disabilities, job availability, and their interrelation. The SSA asks:

*Step One:* Are you presently working? (If so, you are ineligible.) See 20 CFR § 404.1520(b) (1998).

*Step Two:* Do you have a "severe impairment," *i. e.,* one that "significantly limits" your ability to do basic work activities? (If not, you are ineligible.) See § 404.1520(c).

*Step Three:* Does your impairment "mee[t] or equa[l]" an impairment on a specific (and fairly lengthy) SSA list? (If so, you are eligible *without more.*) See §§ 404.1520(d), 404.1525, 404.1526.

*Step Four:* If your impairment does not meet or equal a listed impairment, can you perform your "past relevant work?" (If so, you are ineligible.) See § 404.1520(e).

*Step Five:* If your impairment does not meet or equal a listed impairment and you cannot perform your "past relevant work," then can you perform other jobs that exist in significant numbers in the national economy? (If not, you are eligible.) See §§ 404.1520(f ), 404.1560(c).

The presumptions embodied in these questions—particularly those necessary to produce Step Three's list, which, the Government tells us, accounts for approximately 60 percent of all awards, see Tr. of Oral Arg. 20—grow out of the need to administer a large benefits system efficiently. But they inevitably simplify, eliminating consideration of many differences potentially relevant to an individual's ability to perform a particular job. Hence, an individual might qualify for SSDI under the SSA's administrative rules and yet, due to special individual circumstances, remain capable of "perform[ing] the essential functions" of her job.

Further, the SSA sometimes grants SSDI benefits to individuals who not only can work, but are working. For example, to facilitate a disabled person's reentry into the work force, the SSA authorizes a 9-month trial-work period during which SSDI recipients may receive full benefits. See 42 U. S. C. §§ 422(c), 423(e)(1); 20 CFR § 404.1592 (1998). See also § 404.1592a (benefits available for an additional 15-month period depending upon earnings). Improvement in a totally disabled person's physical condition, while permitting that person to work, will not necessarily or immediately lead the SSA to terminate SSDI benefits. And the nature of an individual's disability may change over time, so that a statement about that disability at the time of an individual's application for SSDI benefits may not reflect an individual's capacities at the time of the relevant employment decision.

Finally, if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system. Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternately or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency." Fed. Rule Civ. Proc. 8(e)(2). We do not see why the law in respect to the assertion of SSDI and ADA claims should differ. (And, as we said, we leave the law in respect to purely factual contradictions where we found it.)

In light of these examples, we would not apply a special legal presumption permitting someone who has applied for, or received, SSDI benefits to bring an ADA suit only in "some limited and highly unusual set of circumstances." 120 F. 3d, at 517.

Nonetheless, in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim. Summary judgment for a defendant is appropriate when the plaintiff

"fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex Corp.* v. *Catrett*, 477 U. S. 317, 322 (1986). An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U. S. C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

The lower courts, in somewhat comparable circumstances, have found a similar need for explanation. They have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity. See, *e. g.*, *Colantuoni* v. *Alfred Calcagni & Sons, Inc.*, 44 F. 3d 1, 5 (CA1 1994); *Rule* v. *Brine, Inc.*, 85 F. 3d 1002, 1011 (CA2 1996); *Hackman* v. *Valley Fair*, 932 F. 2d 239, 241 (CA3 1991); *Barwick* v. *Celotex Corp.*, 736 F. 2d 946, 960 (CA4 1984); *Albertson* v. *T. J. Stevenson & Co.*, 749 F. 2d 223, 228 (CA5 1984); *Davidson & Jones Development Co.* v. *Elmore Development Co.*, 921 F. 2d 1343, 1352 (CA6 1991); *Slowiak* v. *Land O'Lakes, Inc.*, 987 F. 2d 1293, 1297 (CA7 1993); *Camfield Tires, Inc.* v. *Michelin Tire Corp.*, 719 F. 2d 1361, 1365–1366 (CA8 1983); *Kennedy* v. *Allied Mutual Ins. Co.*, 952 F. 2d 262, 266 (CA9 1991); *Franks* v. *Nimmo*, 796 F. 2d 1230, 1237 (CA10 1986); *Tippens* v. *Celotex Corp.*, 805 F. 2d 949, 953–954 (CA11 1986); *Pyramid Securities Ltd.* v. *IB Resolution, Inc.*,

924 F. 2d 1114, 1123 (CADC), cert. denied, 502 U. S. 822 (1991); *Sinskey* v. *Pharmacia Opthalmics, Inc.*, 982 F. 2d 494, 498 (CA Fed. 1992), cert. denied, 508 U. S. 912 (1993). Although these cases for the most part involve purely factual contradictions (as to which we do not necessarily endorse these cases, but leave the law as we found it), we believe that a similar insistence upon explanation is warranted here, where the conflict involves a legal conclusion. When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

### III

In her brief in this Court, Cleveland explains the discrepancy between her SSDI statements that she was "totally disabled" and her ADA claim that she could "perform the essential functions" of her job. The first statements, she says, "were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work." Brief for Petitioner 43. Moreover, she claims the SSDI statements were "accurate statements" if examined "in the time period in which they were made." *Ibid.* The parties should have the opportunity in the trial court to present, or to contest, these explanations, in sworn form where appropriate. Accordingly, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*