UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 99-60037

CONDERE CORPORATION,
doing business as Servis Fleet Tire Company,
doing business as Fidelity Tire and Manufacturing Company

Debtor.

-----------------------------------------------------------------

LOCAL UNION 303L.

Appellant,

v.

CONDERE CORPORATION,
doing business as Servis Fleet Tire Company,
doing business as Fidelity Tire and Manufacturing Company

Appellee.

Appeal from the United States District Court for the
Southern District of Mississippi
(3:97-CV-471)

July 11, 2000

Before REYNALDO G. GARZA, JONES, and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:[*]

_____

[*]     Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

The United Steelworkers of America and its Local Union 303L (collectively, the "Union") appeal the district court's application of judicial estoppel to prevent arbitration of certain grievances under its collective bargaining agreement with Condere Corporation ("Condere"). Because the requirements for judicial estoppel have not been met in this case, we vacate the district court's order as to the arbitrability of the Union's grievances and remand for further proceedings.

## I.  BACKGROUND

Until June 1997, Condere Corporation operated a tire manufacturing facility in Natchez, Mississippi. Local Union 303L was the collective bargaining representative for the employees at this plant. On May 13, 1997, Condere filed a Chapter 11 bankruptcy petition.[1] Condere shut down most of its production, and on June 27, it stopped all production and closed the plant. Contemporaneously, Condere filed a motion under 11 U.S.C. § 1113 to reject the collective bargaining agreement ("CBA") between it and the Union. The reference was withdrawn to the district court under 28 U.S.C. § 157(d) on the court's motion.

In a hearing on the motion shortly thereafter, the Union opposed rejection and argued that the court should direct the parties to continue negotiating a new bargaining agreement. The

---

[1]     In re Condere Corporation, 228 B.R. 615 (Bankr. S.D. Miss. 1998).

district court so ordered, and in the next few weeks, the parties were able to resolve most, but not all, outstanding disputes. They then agreed and stipulated in a conference with the court that the court had jurisdiction and authority, with the parties' consent, to determine the few remaining unresolved issues by rejecting the CBA on certain stated conditions. These conditions would consist of the court's choosing the position of one party over the other, thereby resolving the remaining issues between them. The district court complied with the parties' wishes, issuing an order (the "Rejection Order") on August 18, 1998 that denied rejection of the CBA as to certain disputed items and allowed rejection as to others.

The Union had initially opposed rejection on grounds that Condere had violated the CBA after filing its bankruptcy petition and had thereby forfeited rejection under § 1113. These alleged violations were detailed in numerous grievances the Union had filed against Condere. Following the Rejection Order, the Union attempted to submit these post-petition grievances to arbitration, in accordance with the grievance and arbitration provisions of the CBA. Condere responded that the Rejection Order precluded arbitration of the grievances.

Several more disputes over the interpretation of the Rejection Order arose between the parties, and they again went before the district court. On December 21, 1998, the court issued

3

an order (the "Clarification Order"), finding, <u>inter</u> <u>alia</u>, that the Union was judicially estopped from arbitrating post-petition grievances. Following the court's rejection of the Union's motion to reconsider, the Union filed this appeal challenging the court's application of judicial estoppel to bar arbitration of the Union's post-petition grievances.[2]

## II. DISCUSSION

Because the decision to invoke judicial estoppel lies within the court's discretion, we review the decision to invoke this doctrine for abuse of discretion. <u>In re Coastal Plains, Inc.</u>, 179 F.3d 197, 205 (5th Cir. 1999); <u>Ergo Science, Inc. v. Martin</u>, 73 F.3d 595, 598 (5th Cir. 1996); <u>Data General Corp. v. Johnson</u>, 78 F.3d 1556, 1565 (Fed. Cir. 1996). A district court abuses its discretion when it makes an error of law or clearly erroneous factual findings. <u>Koon v. United States</u>, 518 U.S. 81, 100, 116 S.Ct. 2035 (1996); <u>see</u> <u>also</u> <u>Latvian Shipping Co. v. Baltic Shipping Co.</u>, 99 F.3d 690, 692 (5th Cir. 1996). Because judicial estoppel was raised in the context of a bankruptcy case, we will apply federal law here. <u>In re Coastal Plains</u>, 179 F.3d at 205.

---

[2] The Clarification Order was a final decision on a discrete matter in the larger bankruptcy case, effectively foreclosing any adjudication on the merits, by arbitration or otherwise, of the Union's post-petition grievances. It was therefore a final order within the meaning of 28 U.S.C. § 1291. <u>See</u> <u>Official Committee of Unsecured Creditors v. Cajun Elec. Power Co-op, Inc.</u>, 119 F.3d 349, 353-54 (5th Cir. 1997).

Judicial estoppel is a common law doctrine that "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." Ergo Science, 73 F.3d at 598. The doctrine's purpose is to protect the integrity of the judicial process by preventing the parties from playing "fast and loose with the courts to suit the exigencies of self-interest." In re Coastal Plains, 179 F.3d at 205, quoting Brandon v. Interfirst Corp., 858 F.2d 266, 268 (5th Cir. 1988). Because the doctrine is intended to protect the judicial system rather than the litigants, there is no requirement of detrimental reliance by the opponent of the party against whom the doctrine is applied. In re Coastal Plains, 179 F.3d at 205.

This circuit applies judicial estoppel circumspectly and thus requires that (1) the position of the party to be estopped must be clearly inconsistent with its previous position, and (2) the party to be estopped must have convinced the court to accept the previous position. See In re Coastal Plains, 179 F.3d at 206. In addition, the party to be estopped must have acted intentionally, not inadvertently. See id.

The district court applied judicial estoppel based on its belief that the Union could not have stipulated to rejection without also abandoning its post-petition grievances against Condere. In its Clarification Order, the court noted that the CBA could only be rejected in accordance with 11 U.S.C. § 1113 and that

5

§ 1113(f) prohibited Condere from unilaterally terminating or modifying the CBA before rejection.  See In re Alabama Symphony Ass'n, 211 B.R. 65, 71 (N.D. Ala. 1996)(breach of a CBA constitutes violation of § 1113(f) precluding rejection).  The Union relied on Alabama Symphony in opposing rejection, precisely because Condere had allegedly committed post-petition violations of the CBA.  When the Union reversed course and stipulated to rejection the district court concluded that the Union had "implicit[ly]" abandoned its position that Condere committed post-petition violations of the CBA:

> From their joint stipulation to rejection, the court concluded that the parties' understanding, vis-á-vis their future relationship, was that by-gones were by-gones. . . . [T]he court assumed from their conduct and representation that the parties intended a "fresh start" in all respects.  The court relied on this implicit representation in rejecting the specific provisions of the CBA.  The court therefore finds that, by voluntarily stipulating to rejection under § 1113, the Union is judicially estopped from asserting that Condere engaged in conduct that precluded rejection of the CBA.

December 21, 1998 Order at 5.

Though the Union raises several objections to this order, its chief contention -- that the requirements of judicial estoppel were not met in this case -- is sufficient to do the job.  In particular, the record supports the Union's assertion that there was no clear inconsistency between its stipulation to rejection and its attempt to arbitrate post-petition grievances.  Because this prerequisite of judicial estoppel is not met, we need not discuss

6

whether an inconsistency must be factual or whether the Union in some sense "prevailed" in the rejection proceeding.

In stipulating to the court's jurisdiction to reject on conditions, the Union took no position on whether violations of the CBA had occurred. It never stated, in a hearing or by brief, that its grievances were not arbitrable or that it was abandoning arbitration. Rather, by stipulating to rejection, the Union waived or withdrew its legal argument under <u>Alabama Symphony</u> that certain violations of the CBA prevented rejection. This change of position in the context of the rejection proceedings did not necessarily implicate the Union's position on the arbitrability of its grievances. Indeed, the rejection of the CBA under § 1113 is a different proceeding in bankruptcy court than dealing with post-petition, pre-rejection breaches of a CBA.[3]

And even if the district court had been correct in finding that the Union had implicitly abandoned its grievances by stipulating to rejection, judicial estoppel was not warranted. This circuit has never held that judicial estoppel is appropriate when a party's change of position is merely implied rather than

---

[3]    Moreover, we reject any suggestion on Condere's part that arbitration of Union's grievances is inherently inconsistent with rejection. It was Condere, after all, which argued in the rejection proceedings that the grievances were arbitrable <u>and</u> that the CBA should be rejected.

clear and express.[4]  Moreover, a recent Supreme Court decision counsels against overbroad application of judicial estoppel.  See Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 119 S.Ct. 1597 (1999).  In Cleveland, the Court reversed a decision that estopped an individual who had previously filed for social security disability benefits ("SSDI") from asserting a claim under the Americans with Disabilities Act ("ADA").  See Cleveland, 526 U.S. at 807.  While the Court noted the apparent conflict existing in such a case (an SSDI recipient must be unable to work while an ADA plaintiff must be able to perform essential job functions), the Court found there was no inherent inconsistency that would justify a presumption of estoppel.  It reasoned that the assertions required to make claims under SSDI and the ADA are not factual statements but rather "context-dependent legal conclusion[s]" that often "comfortably exist side by side" despite apparent conflict. See id. at 802-03.

While Cleveland does not directly control this case, its cautious approach to estoppel counsels against extending the application of judicial estoppel to a party's implied changes of legal position.  Cleveland lends support to this circuit's rule limiting judicial estoppel to cases where a party's position is

---

[4]    See, e.g., Ergo Science, 73 F.3d at 600 (applying judicial estoppel based on statement made in open court); Hidden Oaks v. City of Austin, 138 F.3d 1036, 1047 (5th Cir. 1998)(same).

clearly inconsistent with its previous one.[5] To the extent the district court believed that an implied representation rather than an express inconsistency could support a finding of judicial estoppel, it misapprehended the law and abused its discretion.

## III. CONCLUSION

In sum, the district court abused its discretion in applying judicial estoppel to bar arbitration of the Union's post-petition grievances. There was no clear inconsistency between the Union's position on rejection and its position on arbitration. Furthermore, the district court misapprehended the law in finding that anything less than clear inconsistency could support the application of judicial estoppel.

For the foregoing reasons, the district court's order of December 21, 1998 order is **VACATED** as to the arbitrability of the Union's post-petition grievances and **REMANDED** for further proceedings. In so doing, we take no position on whether other considerations might bar the Union's arbitration of post-petition grievances.

---

[5] Under some factual circumstances, it may be possible to make a showing of clear inconsistency on the basis of an implied representation, but this is not such a case.

9