**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 07-1422

ROBERTO MELÉNDEZ-SANTANA; JESSICA GONZÁLES-ORTIZ,
Plaintiffs, Appellants,

v.

PUERTO RICO PORTS AUTHORITY, ISRAEL ORTIZ-DE-JESÚS; MANUEL
VILLIZÀN-LING-LONG,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., District Judge]

Before
Lynch, Chief Judge,
Selya, Circuit Judge,
and Schwarzer,[*]District Judge.

Rafael A. Oliveras López De Victoria on brief for appellant.
Martha L Martínez Rodríguez, and Manuel A. Núñez Law Offices
on brief for appellee the Puerto Rico Ports Authority.
Maite D. Oronoz-Rodriguez, Acting Solicitor General, and Irene
S. Soroeta-Kodesh, Assistant Solicitor General, on brief for
appellees Israel Ortiz-De-Jesús and Manuel Villazàn-Ling-Long.

October 16, 2008

---

[*]Of the Northern District of California, sitting by designation.

**Schwarzer**, **District Judge**, Plaintiffs Roberto Meléndez-Santana and his wife Jessica González-Ortiz appeal the district court's summary judgment for the defendants, the Puerto Rico Ports Authority ("PRPA"), Israel Ortiz-de-Jesús, and Manuel Villazán-Ling-Long, dismissing Meléndez-Santana's action for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and for breach of contract. Because Meléndez-Santana has failed to establish that he was a qualified individual under the ADA, or that the contract claim is properly before us, we affirm the judgment of the district court.

## I. Factual and Procedural History

The material facts are undisputed. Mr. Meléndez-Santana began working for the PRPA in 1993 as a security supervisor. From 1994 to 1998, he served as an assistant and bodyguard to the Executive Director of the PRPA. In 1998, Meléndez-Santana was transferred to the International Airport where he again served as a security supervisor. The essential duties of a security supervisor include regular contact with the public and other employees, as well as: (i) inspection of all services rendered by guards and other employees in the security area; (ii) periodic inspections of security areas; (iii) enforcing the security rules

and recommending necessary measures; and (iv) communicating with different security areas, local police and federal authorities. After the terrorist attacks on September 11, 2001, security procedures at the airport were altered, and employees were required to work extended rotating shifts that included night duty. In February 2002, Meléndez-Santana requested reassignment because the night time shifts were difficult for him. He was transferred to the Maritime Division effective June 10, 2002, but he was dissatisfied with the new assignment because it involved similar duties and hours.

In July 2002, Meléndez-Santana's doctor certified that he was unable to work due to severe depression and anxiety that limited his concentration and made him unstable and aggressive. He went on leave for approximately ten months. During that time, in September 2002, he applied for Social Security Disability Insurance benefits, claiming total disability.

Meléndez-Santana returned to work on May 5, 2003, reporting to the Maritime Division. He brought a certificate from his family doctor dated May 1, 2003, stating that he could not work rotating night time shifts, and could not work in security. He requested changes in his duties as a reasonable accommodation based on his condition, in accordance with PRPA procedures. The PRPA

- 3 -

referred him for medical evaluation to determine if he was eligible for a reasonable accommodation and temporarily assigned him to work as a security supervisor in the PRPA's main office until the evaluation process was completed. This position required only day shifts, and consisted of lighter duties than his job in the Maritime Division.

On May 14, 2003, Dr. López Cumpiano, a psychiatrist, examined Meléndez-Santana in the course of the reasonable accommodation evaluation process. In his report, Dr. Cumpiano concluded that Meléndez-Santana still suffered from mental illness and was not able to perform any of the essential duties of his job, with or without accommodation. This report was sent to the PRPA on June 3, 2003.

On June 2, 2003, Meléndez-Santana got into an argument with his supervisor, Manuel Villazàn-Ling-Long, who informed Meléndez-Santana that he was no longer assigned to the PRPA headquarters. When he was ordered to report to the San Juan Harbor to begin a rotating shift that initially would go from 2:00 to 10:30 pm, he became very upset. He felt that the night time shifts aggravated his mental illness and prevented him from taking sleeping medication prescribed by his doctor. He left PRPA

- 4 -

headquarters, did not report that evening to the Harbor, and did not return to work at the PRPA.

On December 1, 2004, he filed this action in the district court alleging violations of the ADA and Title VII of the Civil Rights Act of 1964, and various state law claims. On January 22, 2007, the district court granted summary judgment to the defendants on the ADA claim, dismissed the Title VII claim sua sponte under Fed. R. Civ. P. 12(b)(6), and declined to exercise supplemental jurisdiction over the state law claims. This timely appeal followed.

## II. Discussion

### A. The Americans with Disabilities Act

We review a summary judgment de novo drawing all reasonable inferences in favor of the non-moving party. Thompson v. Coca-Cola Co. 522 F.3d 168, 175 (1st Cir. 2008).

The district court found that Meléndez-Santana failed to establish a prima facie case of disability discrimination under the ADA. To make out a prima facie case, Meléndez-Santana had to prove 1) that he suffered from a disability within the meaning of the ADA; 2) that he could nonetheless perform the essential functions of the job with or without reasonable accommodation; and 3) that

his employer discharged or took an adverse employment action against him in whole or in part because of his disability. <u>Orta-Castro</u> v. <u>Merck, Sharp & Dohme Química P.R., Inc.</u> 447 F.3d 105, 111 (1st Cir. 2006). The district court found that Meléndez-Santana suffered a disability within the meaning of the ADA, and that finding is not in dispute. The district court concluded, however, that he was not a qualified individual under the ADA because he did not establish that he was able to perform the essential functions of the job even with reasonable accommodation.

Upon Meléndez-Santana's return to work in May 2003 after his ten-month medical leave and in the course of the reasonable accommodation evaluation process, he was examined by Dr. López Cumpiano, the designated examiner. Dr. López Cumpiano determined that Meléndez-Santana was unable to perform any task with or without accommodation. His report was forwarded to the Social Security Administration, which determined that Meléndez-Santana was unable to perform the duties of his position or any other job and granted him Social Security Disability Insurance benefits.

Meléndez-Santana has offered no evidence that calls into question the finding of total disability. Moreover, his receipt of Social Security Disability Insurance benefits placed on him the burden of proffering a sufficient explanation for the contradiction

between his total disability claim and his ADA claim which would allow a reasonable jury to conclude that the plaintiff could perform the essential functions of his job with or without accommodation. <u>Cleveland</u> v. <u>Policy Mgmt. Sys.</u>, 526 U.S. 795, 807 (1999). No such explanation has been offered.

Because the undisputed evidence shows that Meléndez-Santana is not able to perform the essential functions of his job with or without accommodation, he has failed to establish a prima facie case under the ADA. Summary judgment was properly granted on the ADA claim.

## B.  Breach of Contract Claim

For the first time on appeal, Meléndez-Santana asserts a claim that PRPA breached a reasonable accommodation agreement, a claim neither pleaded in the complaint nor raised in the court below. "Under the familiar raise-or-waive rule, legal theories not asserted in the lower court cannot be broached for the first time on appeal." <u>Goodwin</u> v. <u>C.N.J., Inc.,</u> 436 F3d 44, 51 (1st Cir. 2006).

Even were we to consider this claim, it is clear that when Meléndez-Santana returned to work on May 5, his assignment to work as safety supervisor at the Main Office was only temporary,

while his request for reasonable accommodation was being evaluated. There is no evidence of any agreement between him and PRPA to provide a reasonable accommodation.

AFFIRMED.