FILED
United States Court of Appeals
Tenth Circuit

December 22, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

ALPHONSO MYERS,

       Plaintiff – Appellant,

v.

KNIGHT PROTECTIVE SERVICE, INC.; WILLIAM THOMPSON, an individual,

       Defendants – Appellees.

No. 12-6056

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:10-CV-00866-C)**

---

Submitted on the briefs:[*]

Scott F. Brockman of Ward & Glass, LLP, Norman, Oklahoma; Ken Feagins of Winningham, Stein & Basey, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Angela Caywood Jones and John M. Nelson, of Park, Nelson, Caywood, Jones, LLP, Chickasha, Oklahoma, for Defendant-Appellee William Thompson.

---

Before **GORSUCH**, **O'BRIEN** and **PHILLIPS**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**GORSUCH**, Circuit Judge.

After Alphonso Myers suffered a workplace injury, he sought and obtained social security disability benefits on the ground that he was unable to work. But while claiming as much before the Social Security Administration it turns out Mr. Myers was also applying for and winning a job as an armed security guard with Knight Protective Service. As part of the application process, Knight asked Mr. Myers a number of questions about his physical condition. Each time, Mr. Myers said he suffered no relevant disabilities. These answers, he now admits, were false.

Soon enough one of Mr. Myers's supervisors, William Thompson, noticed that Mr. Myers seemed to be in pain. When Mr. Thompson asked if he was alright, Mr. Myers confided that he had undergone a number of neck and back surgeries and that he experienced recurring pain. Mr. Thompson grew concerned that Mr. Myers wasn't up to the job of an armed guard, that someone might grab Mr. Myers's weapon or, even worse, take him hostage. Mr. Thompson told Mr. Myers that he couldn't return to work without passing a physical examination. Mr. Myers waited months, expecting the company to schedule the exam. But that never happened. As Mr. Myers saw it, he was effectively terminated and he decided to sue.

In this suit, Mr. Myers alleged that Knight and Mr. Thompson engaged in race and disability discrimination and committed various torts. The district court, however, dismissed some claims and granted summary judgment to the defendants on the rest. Mr. Myers now appeals, asking us to revive his claims of federal discrimination against the company and tortious interference with contract or business relations against Mr. Thompson.

Invoking the Americans with Disabilities Act, Mr. Myers alleges that Knight discriminated against him on the basis of his physical disabilities. *See* 42 U.S.C. § 12112(a). He also claims the company violated Title VII by firing him on account of his race. *See id.* § 2000e-2(a)(1). But to make out a discrimination claim under the ADA, an employee must, among other things, show he is "qualified, with or without reasonable accommodation, to perform the essential functions of the job." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (internal quotation marks omitted). Absent direct evidence of discrimination, a Title VII plaintiff similarly must show he is "qualified for the position at issue." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

This much Mr. Myers cannot do. As he acknowledged in his written employment application with Knight, the essential functions of his job as an armed security guard required him to engage in frequent and prolonged walking, standing, and sitting; to react quickly to dangerous situations; to subdue violent

individuals; and to lift heavy weights. Yet in representations Mr. Myers made to the Social Security Administration he conceded that during the period in question he was in pain all the time, could stand for only twenty minutes, and could walk for just ten or fifteen minutes. Sometimes, Mr. Myers told the agency, his pain was so severe that he needed to stay at home and lie down. It's undisputed, too, that since 2005 he's been unable to lift more than ten pounds.

To be sure, we won't always find a discrimination claim barred because an individual applies for or receives social security benefits. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999). But when a plaintiff makes seemingly inconsistent statements like those before us he must offer a "sufficient explanation" for the apparent contradiction. *Id.* at 806. That Mr. Myers has failed to do. Neither, in any event, has he offered any competent evidence to support his allegation of disparate treatment on the basis of race. As the district court recognized, a plaintiff's unsupported allegations of disparate treatment are not enough to establish a triable claim. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994).

Mr. Myers complains that the district court failed to address his "cat's paw" theory that Mr. Thompson bore unlawful animus against him and influenced his supervisors' decision to terminate him. *See generally Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 795-96 (10th Cir. 2014). But our review of the record reveals that the district court didn't address the theory because it wasn't fairly

presented. In any event, we don't arrive at the point in the analysis where the theory might become relevant: as we've explained, Mr. Myers failed to establish even a prima facie case of discrimination by anyone. Neither, for that matter, has he produced evidence that might allow a reasonable factfinder to draw the inference that Mr. Thompson bore any unlawful animus. The only reasonable interpretation of Mr. Thompson's actions available on this record is that he was concerned about protecting his employer's interests.

That observation disposes as well of the tortious interference claim against Mr. Thompson. As the district court observed, under Oklahoma law an employee alleged to have tampered with a contract between his principal and the plaintiff can be held liable only for acting outside the scope of his employment to further his own interests. *See Martin v. Johnson*, 975 P.2d 889, 896-97 (Okla. 1998). And here, again, the evidence before us fails to suggest anything along those lines.

The motion to seal certain medical records is granted. The judgment of the district court is affirmed.