NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0385n.06

No. 09-1512

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 25, 2010**
LEONARD GREEN, Clerk

MICHALINE JO NEVIEW; HIAL JAMES NEVIEW,  )
                                          )
    Plaintiffs-Appellants,                 )  ON APPEAL FROM THE
                                          )  UNITED STATES DISTRICT
    v.                                     )  COURT FOR THE EASTERN
                                          )  DISTRICT OF MICHIGAN
D.O.C. OPTICS CORPORATION, dba D.O.C.,     )
                                          )
    Defendant-Appellee.                    )
                                          )

BEFORE:  KEITH, BOGGS, and GRIFFIN, Circuit Judges.

    GRIFFIN, Circuit Judge.

    Plaintiff Michaline Jo Neview ("Neview") and her husband, plaintiff Hial James Neview, filed this action alleging various employment discrimination and tort claims against her former employer, defendant D.O.C. Optics Corporation ("DOC").  Plaintiffs appeal the district court's grant of summary judgment in favor of DOC.  We affirm.

I.

    DOC was a full-service retail optical company that provided eye exams and sold prescription eyeware to the public.[1]  On August 1, 2002, DOC hired Neview as an optical dispenser in its Midland store and, on November 9, 2003, promoted her to manager of that location.  As manager,

---

[1]In February 2006, DOC sold its assets to Luxotica, a competing operator of retail optical companies.

Neview was expected to oversee store operations, sales and profitability, manage store personnel, and enforce employee discipline procedures. She was also required to possess "[e]xcellent customer service [and] communication skills."

On January 24, 2006, Neview was notified that her employment with DOC was terminated.[2] Cheryl Maxwell, DOC's Human Resource Manager, provided a summary of the events surrounding that decision:

> Michaline Neview was placed on a four day suspension January 20, 2006, due to customer service issues and emotional instability . . . . January 20, 2006, [Neview] began crying while at the front desk, was taken to the break room and began kicking the walls and repeating she would like to hurt someone. Her husband was called to escort her home. It was also reported that [Neview] on several occasions had "meltdowns" while at work and left early not completing her shift.

> \* \* \*

> Numerous confidential complaints were made in the month prior to her termination concerning her behavior towards staff and customers. Charlene Kling, [DOC] auditor, had also witnessed harsh behavior towards customers and staff while in the store completing an audit . . . . It was reported that on many occasions [Neview] had made degrading remarks and comments concerning her staff while on the floor. These incidents took place many times when customers could witness or overhear the conversations. Employees began to report they were fearful of [Neview] and her actions. She also told her staff she had developed mental problems, however, doctor notification of these issues was not received at corporate until Monday, January 23, 2006, following her suspension. Three written customer complaints referring to her behavior were received the week of January 16-20, 2006. January 24, 2006 [sic] [Neview] phoned Mark Bruseloff to ask for disability paperwork; however, the decision to terminate [Neview] had been decided prior to the call.

---

[2]DOC contends that Neview was an "at-will" employee that could be fired at any time for any reason. Neview acknowledged this fact at her deposition.

According to DOC's Chief Financial Officer ("CFO"), James Lies, although Neview was formally terminated on January 24, 2006, he made the decision to discharge Neview on January 20, 2006, "after being advised by Cheryl Maxwell about customer and employee complaints concerning [Neview's] aggressive and unprofessional conduct, and [Neview's] outburst at the front desk of the Midland Store." Lies maintains that Neview's conduct "violated DOC Work Rule Number 17, was totally inappropriate and unbefitting a DOC store manager, and [he] believed posed a threat to the safety of customers and employees alike."[3]  Moreover, Lies states that "[a]t the time [he] made the decision to terminate Plaintiff, [he] had no knowledge that Plaintiff had or was suffering from any disability or that Plaintiff was seeing a therapist."

Following her discharge, Neview applied for workers' compensation benefits.  At her February 5, 2008, hearing, Neview testified that she was unable to maintain emotional stability or focus, could not be alone in public, and on some days was unable to leave her front porch.  Neview further testified that she could not perform any of her past full-time employment.

On March 26, 2008, Michigan's Department of Labor & Economic Growth determined that Neview was disabled and awarded compensation benefits.  Specifically, the administrative law judge

---

[3]DOC Work Rule Number 17 states:

Discourtesy to customers, vendors or others for any reason whatsoever including insulting, sarcastic, negative, angry words or attitude towards customers and permitting patients or customers to overhear such comments when conversing with others.

1st Violation - Up to and Including Discharge

("ALJ") found that Neview was "unable to work in any capacity at this time and therefore has a disability as defined by the Act." The ALJ further determined that DOC was obligated to pay benefits from her termination until August 1, 2006.

On November 3, 2006, Neview filed a charge of discrimination with the Michigan Department of Civil Rights ("MDCR") and the Equal Employment Opportunity Commission ("EEOC"), asserting age, gender, and disability as reasons for discrimination. On March 2, 2007, the EEOC issued a "right to sue" letter under Title VII and the Americans with Disabilities Act ("ADA"). Plaintiffs subsequently filed their complaint in the district court on May 29, 2007, alleging several types of discrimination.

Neview's sexual harassment claim involved the conduct of two subordinate DOC employees located in the Midland store: William Baird, a lab technician, and Mike Flynn, the lab manager.[4] In January 2005, Baird was arrested for having a sexual relationship with a minor. Neview contends that over approximately a month-long period Baird raised this incident approximately five times in conversations either with her or with other employees, such as Flynn. Neview acknowledges, however, that she solicited information from Baird concerning the circumstances of his arrest. Moreover, although Neview recommended to her district manager that Baird be discharged due to the arrest, she did not discipline him under her own authority or submit a complaint to DOC

---

[4]At the time of Neview's employment, DOC had a sexual harassment policy that prohibited "[c]onduct that creates an intimidating/offensive workplace interfering with work performance." The policy instructs "[a]ny employee who feels he or she is a victim of unlawful harassment [to] report the matter to the attention of his or her Supervisor immediately." In response, DOC would investigate the allegations and take "appropriate corrective action if warranted by the investigation."

regarding Baird's alleged inappropriate behavior.[5]  In fact, Neview testified that she "felt sorry for him" and believed that Baird was attempting to "convince [her] that he was innocent" of the charge.

In regards to Flynn, Neview identified three incidents that she believed supported her sexual harassment claim.[6]  First, Flynn told Neview that she had "booby ash" after she returned from a cigarette break.  Neview, however, testified that she considered the comment to be a "joke."  Second, Flynn allegedly showed Neview a letter from his wife expressing that their marriage embraced an open sexual lifestyle.  Although Neview found the letter to be "tasteless," she did not perceive it as directed towards her.  Finally, in regards to Baird's arrest, Flynn commented to Neview that he believed the underage girl's father was "whoring her out[.]"  As manager of the Midland store, Neview stated that she warned Flynn twice orally and once in writing due to his inappropriate behavior.

Neview also alleges discrimination based on her purported emotional and psychological disability.  The record contains a medical report dated November 30, 2005, in which Neview indicated she was seeking psychiatric treatment due to "childhood sexual abuse coming up in conflicts [with her] abusive husband."  There is no indication of problems occurring in the workplace.  On January 23, 2006, Douglas Foster, M.D., authored a letter, addressed "To whom it

---

[5]As manager of the Midland store, Neview had the authority to discipline employees for inappropriate conduct and language.

[6]Neview's complaint does not allege any sexual harassment related to Flynn.  At Neview's deposition, counsel indicated he intended to amend the complaint to include such allegations, but failed to do so.

may concern," stating that Neview suffered from post-traumatic stress disorder ("PTSD") and major depression. In his letter, Dr. Foster indicated that Neview was suffering from an "outbreak of the PTSD symptoms and [would] need to be excused from work." The record also contains a December 11, 2006, letter drafted by Kishore Kondapaneni, M.D., also directed "To whom it may concern," which stated that Neview suffered from "significant childhood traumas that tend to trigger off when she encountered with her employee."

In this appeal, plaintiffs assert that the district court erred in granting DOC's motion for summary judgment on Neview's claims of sexual harassment and sex discrimination under Title VII and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), and discrimination under the ADA and the Michigan Persons With Disabilities Civil Rights Act ("PWDCRA"). Plaintiffs also appeal Hial Neview's loss-of-consortium claim. Plaintiffs do not appeal the dismissal of the remaining counts in their complaint, including Neview's claims of age discrimination, intentional or negligent infliction of emotional distress, and a violation of the Equal Pay Act.

II.

This court reviews de novo the district court's order granting summary judgment. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  When determining whether the movant has met this burden, we must view the evidence in the light most favorable to the nonmoving party.  *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

III.

Neview alleges that her co-workers' sexually explicit comments created a hostile work environment in violation of the ELCRA.  To establish a hostile work environment claim under the ELCRA, a plaintiff must show that:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Downey v. Charlevoix County Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 716 (Mich. Ct. App. 1998); *see also Meyer v. Macomb Twp. of Macomb County, Mich.*, No. 06-14953, 2008 WL 2064551, at *7 (E.D. Mich. May 14, 2008).[7]

An employer on notice of alleged harassment may avoid liability "if it adequately investigated and took prompt and appropriate remedial action[.]"  *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 916 (Mich. 2000) (internal quotation marks and citation omitted).  "An employer, of course, must have notice of alleged harassment before being held liable for not implementing

---

[7]In order to establish a claim under the ELCRA, plaintiff must establish the same five elements required for a Title VII claim.  *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003).

action." *Id.* "[N]otice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Id*. at 919. "The bottom line is that, in cases involving a hostile work environment claim, a plaintiff must show some *fault* on the part of the employer." *Id.* at 916.

Here, Neview has not established a hostile work environment claim because she failed to provide notice to her employer of the alleged offensive behavior. Although Neview warned Flynn on three occasions regarding his conduct, there is nothing in the record that indicates that Neview notified her supervisor of Flynn's alleged harassment. Similarly, while the record shows that Neview informed her district manager of Baird's arrest, there is no indication that she communicated her personal concerns of harassment to her superior. Because Neview has failed to establish that DOC was aware of harassing behavior by Flynn or Baird, her hostile work environment claim fails as a matter of law under both Title VII and the ELCRA.[8]

---

[8]It is also questionable whether Neview's claims of sexual harassment involving Baird and Flynn were timely filed for purposes of a Title VII claim. From her deposition testimony, it appears that the last offensive encounter with either individual occurred in February 2005, which is over 600 days before Neview filed her November 3, 2006, EEOC claim. Under Title VII, two types of actions may be brought: (1) claims alleging "discrete discriminatory acts," and (2) claims alleging a "hostile work environment[.]" *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). *Morgan* sets forth a list of discrete acts, which include "acts such as termination, failure to promote, denial of transfer, or refusal to hire[.]" *Id.* at 114.

In contrast, hostile work environment claims "involve[ ] repeated conduct" and require the plaintiff to demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Id.* at 115-16 (citation and internal quotation marks

IV.

Neview next argues that she was treated differently and more harshly than male employees at DOC. Federal law prohibits employers from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Because Neview does not proffer direct evidence of sex discrimination, we must determine whether she presented sufficient circumstantial evidence to overcome DOC's motion for summary judgment. *See Stockman v. Oakcrest Dental Ctr.*, 480 F.3d 791, 801 (6th Cir. 2007) (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998)).

Our analysis is governed by the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and refined in *Texas Dep't of Cmty. Affairs v.*

---

omitted). "Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within [the applicable time period] of any act that is part of the hostile work environment." *Id.* at 118. Accordingly, Neview must allege a non-discrete action that properly forms the basis of a hostile work environment claim under Title VII within the applicable 300-day period in order for her claim to be considered timely. Her termination constituted a discrete act of discrimination, which cannot be characterized as part of a continuing hostile work environment. *See Sasse v. U.S. Dep't of Labor*, 409 F.3d 773, 783 (6th Cir. 2005).

At oral argument, plaintiffs' counsel was unable to identify a non-discrete action within the applicable time period and, instead, argued that the issue had not been raised below. This is demonstrably false. A review of the record shows that DOC raised this issue with the district court in its motion for summary judgment and that it is therefore reviewable on appeal. Regardless, because we hold that Neview failed to provide notice to her employer of the alleged offensive behavior, we need not reach the statute of limitations question.

*Burdine*, 450 U.S. 248, 253 (1981). Under that analysis, a plaintiff must first establish a prima facie case of unlawful discrimination, which requires Neview to show that: (1) she was a member of a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) a similarly situated non-protected employee was treated more favorably or she was replaced by someone outside the protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

Once the plaintiff has made her prima facie showing, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory basis for the adverse employment action. *Id*. at 706. This explanation "'must be legally sufficient to justify a judgment for the defendant.'" *Id.* (quoting *Burdine*, 450 U.S. at 255). If the defendant meets its burden, the plaintiff must show that the proffered reason was actually a pretext for unlawful discrimination. *Id.* at 706-07. "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Id.* at 707 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

In the district court, Neview made two allegations in support of her prima facie case: (1) pay disparity between her and her male counterparts; and (2) that Baird was a comparable employee who was retained by DOC. The district court correctly found that Neview failed to demonstrate a prima facie claim under Title VII because she could not rebut DOC's affirmative defenses to her claim of pay disparity, and because Baird was not a similarly situated employee who was treated differently in the context of a disciplinary action.

On appeal, however, Neview argues that "another employee was granted leave and allowed to return to work" whereas Neview's "request for leave" based on "excessive stress placed on Plaintiff by Defendant" was denied. Because Neview did not properly raise this argument below, she is precluded from doing so on appeal. "Issues that are not squarely presented to the trial court are considered waived and may not be raised on appeal." *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1172 (6th Cir. 1996); *see also Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1399 (6th Cir. 1995) ("vague references fail to clearly present the argument in the district court so as to preserve the issue for appellate review"). Moreover, Neview has not clearly identified the sex of this other employee who was granted leave. In order to establish a prima facie case of sex discrimination, Neview is required to show that the other employee was male, and she has failed to do so. Accordingly, we hold that Neview has not demonstrated a prima facie claim under Title VII.[9]

V.

The ADA prohibits discrimination by a covered entity "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

---

[9]To the extent Neview is challenging the district court's determination that Baird was not a similarly situated employee, her argument fails. The district court correctly found that Neview's "situation differed from Baird's because the allegations of misconduct concern erratic behavior in front of customers" and because "there is no indication that the same supervisors were aware of Baird's arguably similar inappropriate conduct, but reacted differently." *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 729 (6th Cir. 2004).

employment." 42 U.S.C. § 12112(a). A prima facie case of disability discrimination under the ADA requires that a plaintiff show: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced."[10] *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (internal citation and quotation marks omitted).

"[A]n employer may legitimately fire an employee for conduct, even conduct that occurs as a result of a disability, if that conduct disqualifies the employee from his or her job." *Id.* at 366. "[A] plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case – at least if she does not offer a sufficient explanation." *Williams v. London Util. Comm'n*, 375 F.3d 424, 429 (6th Cir. 2004) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). "This means that in order to survive a motion for summary judgment, the plaintiff's 'explanation must be sufficient to warrant a reasonable juror's concluding that . . . the plaintiff could nonetheless perform the

---

[10]"Michigan's Persons with Disabilities Civil Rights Act substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002) (footnote omitted). "To prove a discrimination claim under the [PWDCRA], the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004) (citation omitted, alterations in original).

essential functions of her job, with or without reasonable accommodation.'" *Williams*, 375 F.3d at 429 (quoting *Cleveland,* 526 U.S. at 807).

Here, the district court correctly determined that Neview is not a "qualified" individual under the ADA. In both her deposition and at her workers' compensation hearing, Neview testified that at the time of her termination she was totally incapable of working as a DOC store manager, or in any job whatsoever.[11] Michigan's Department of Labor & Economic Growth agreed with Neview's assessment and found that she was "disabled from all gainful employment." Because the ADA's protections are limited only to those disabled persons "qualified" to hold the position in question, *see* 42 U.S.C. § 12112, and Neview has failed to demonstrate that she was "qualified" to work as a DOC store manager, we affirm the district court's decision to grant DOC summary judgment on this issue.

VI.

To establish a prima facie claim of wrongful termination, it is plaintiff's burden to establish that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she was terminated from employment; and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class. *Stockman*, 480 F.3d at 801.

---

[11]The relevant time frame used to determine whether a plaintiff is disabled under the ADA is the time of the claimed adverse employment decision. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996).

Assuming arguendo that Neview had demonstrated a prima facie case based on age, gender, or disability discrimination, the burden shifts to DOC to articulate a legitimate, non-discriminatory reason for terminating her employment. DOC maintains that Neview was discharged because of her conduct on January 20, 2006, and due to other inappropriate interactions with customers in violation of DOC's rules and regulations. Because DOC has stated a legitimate, non-discriminatory reason for terminating Neview, the burden shifts back to Neview to demonstrate that DOC's stated reason is a pretext for discrimination. In order to show pretext, "[a] plaintiff must do more than simply impugn the legitimacy of the asserted justification for her termination; in addition, the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)); *see also Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 (6th Cir. 1994) (holding that plaintiff must do more than impugn employer's asserted justification; "plaintiff must also adduce evidence of the employer's discriminatory animus[.]").

Here, the district court accurately summarized Neview's evidence of pretext and correctly found that it was "insufficient to create a triable issue of fact." Specifically, the district court stated:

> Plaintiff offers her own testimony that her discharge was motivated by her age. Plaintiff's mere assertion is insufficient to create a triable issue of fact. Plaintiff also attacks the sufficiency of Defendant's investigation of her performance. Plaintiff argues that Defendant relied on statements describing the incident by Plaintiff's co-workers that were not credible. While Plaintiff surmises that her co-workers exaggerated events to have Plaintiff discharged, there is no indication that Defendant doubted the credibility of the description of events. Nor does that contention support the conclusion that reports of misbehavior advanced by Plaintiff's colleagues were

motivated by animosity towards Plaintiff's age. In total, Plaintiff has not created a factual dispute that Defendant's conclusion was pretext for age discrimination, or gender and disability discrimination either.

Because Neview has failed to set forth admissible evidence upon which a reasonable juror could find that DOC's stated reason for terminating her employment was a pretext for discrimination, summary judgment in DOC's favor was appropriate.[12]

## VII.

For these reasons, we affirm the judgment of the district court.

---

[12]In view of our holdings, Hial Neview's claim for loss of consortium must also fail because it depends on his wife recovering on another theory. *See Berryman v. Kmart Corp.*, 483 N.W.2d 642, 646 (Mich. Ct. App. 1992) ("A claim of loss of consortium is derivative and recovery is contingent upon the injured spouse's recovery of damages for the injury.").